IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

DANIEL LINDSAY,

    Plaintiff,

v.

CITY OF MOULTRIE, GEORGIA, AND MOULTRIE POLICE DEPARTMENT,

    Defendants.

Civil Action No. 7:13-CV-57 (HL)

**ORDER**

Before the Court is the Motion for Partial Summary Judgment (Doc. 14) filed by Defendants City of Moultrie, Georgia ("City of Moultrie") and the Moultrie Police Department ("MPD" or "the Department"). Based on the reasons provided below, the motion is granted.

**I.    Summary Judgment Standard**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact and … the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A genuine issue of material fact arises only when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court must evaluate all of the evidence, together with any logical inferences, in the light most favorable to the nonmoving party. Id. at 254-55. The court may not, however, make credibility determinations or weigh the evidence. Id. at 255; *see also* Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of a material fact." Celotex, 477 U.S. at 323 (internal quotation omitted). If the movant meets this burden, the burden shifts to the party opposing summary judgment to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact, or that the movant is not entitled to judgment as a matter of law. Id. at 324-26. This evidence must consist of more than conclusory allegations. *See* Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

Under Local Rule 56, the facts listed in the movant's statement of material facts will be deemed admitted as undisputed unless the non-movant denies each specific fact and provides a supporting citation to the factual record. M.D. Ga. L.R. 56. However, even if the non-movant fails to offer adequate objections under Local Rule 56, a court may not accept at face value the movant's depiction of the facts. United States v. One Piece of Real Prop. Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101-02 (11th Cir. 2004). A court must review the record to determine for itself whether the motion for summary judgment is supported by the evidence and that there is no genuine issue of material fact. Id.; see also Reese v. Herbert, 527 F.3d 1253, 1268-69 (11th Cir. 2008).

## II.  Factual Summary

Plaintiff Daniel Lindsay ("Plaintiff") has not rebutted, with specific record citations, the Defendants' statement of undisputed material facts. Therefore, pursuant to Local Rule 56, the facts in Defendants' statement will be considered as undisputed to the extent there is some evidence in the record to support them.

Plaintiff's lawsuit alleges racially-based employment discrimination by the MPD for which the City of Moultrie is also liable. Plaintiff is a Caucasian male. The City of Moultrie hired Plaintiff in December 2004 as a police officer. While with the MPD, Plaintiff has served as both a canine ("K-9") handler and a patrol

officer. Plaintiff's current MPD rank is sergeant. (Defendants' Statement of Undisputed Material Facts ("DSMF"), Doc. 15, ¶¶1-4, 30, 36).

Plaintiff began working as a K-9 handler in the summer of 2009, and he was required to train, feed, and care for his K-9. He worked with his first K-9, named "Hugo," until May 11, 2011 when Hugo died. In February 2012, Plaintiff was assigned to a second K-9, named "Ulrick." Frank Lang ("Chief Lang"), chief of the MPD, attended a seminar in early 2012 where he learned that the Department might be legally required to pay K-9 handlers for the time they spent in caring for their dogs. The MPD consequently instituted a new policy on February 9, 2012 under which K-9 handlers were to use one hour of each twelve-hour shift to care for their dogs. The new policy adequately compensated Plaintiff for the time he took to care for his K-9. (Id. at ¶¶40-48).

During July 2012, Plaintiff was a shift supervisor in the MPD. On July 9, 2012, the MPD hired Hope Allen ("Allen") as an officer and placed her on Plaintiff's shift. Allen is an African-American female. Rocky Hancock ("Hancock"), a Caucasian corporal in the MPD, was appointed as Allen's field training officer ("FTO") and tasked with instructing her on the Department's policies and procedures and the City of Moultrie's layout. As the FTO, Hancock was Allen's supervisor, but since he was also on Plaintiff's shift, he was supervised by Plaintiff. (Id. at ¶¶4-11).

In late July 2012, Allen provided a letter to Chief Lang that complained of racially-offensive behavior by members of Plaintiff's shift. Allen's letter related that Hancock had exchanged racial jokes with Shunell Borders ("Borders"), a female African-American officer on Plaintiff's shift. Hancock had also shown Allen a photograph of Borders holding a Cracker Jacks box whose writing had been changed to "Nigger Jacks." According to Allen, Hancock had additionally shown her a video of a white female impersonating an African-American woman working as a flight attendant and in a hamburger restaurant. Allen's letter went on to claim that Plaintiff had questioned her about "being a black female with blonde hair" and referred to her and Hancock as the "salt and pepper" team. (Id. at ¶¶12-17).

After receiving Allen's complaint, Chief Lang formed a panel of city employees to look into her allegations. Plaintiff was interviewed by the panel and during the interview admitted that inappropriate, racial joking had occurred on his shift for which he bore some responsibility. Subsequent to the interview, Plaintiff wrote a statement which he supplied to Seth Walters ("Walters"), a commander in the MPD serving on the panel. Plaintiff's statement acknowledged that he had heard Borders "make racist comments while in the office" and that he had described Hancock and Allen as "the salt and pepper team." He expressed regret that his comment had made Allen feel uncomfortable and reassured Walters "that

it will not happen again and the 'in house' joking will cease without delay." (Id. at ¶¶18-26).

Chief Lang viewed the video of Plaintiff's interview with the panel and read his statement before deciding on the appropriate response. Chief Lang concluded that Plaintiff knew or should have known that officers on his shift were acting inappropriately and that Plaintiff had made at least one comment to Allen referring to her race. Chief Lang informed Plaintiff on August 10, 2012 that he was being placed on decision-making leave ("DML") with pay for one day. Plaintiff was to take the time to decide whether he wished to remain with the MPD and, if that was his wish, to return to work with a plan of action for how he could change the behavior of which Allen had complained. Plaintiff chose to remain with the MPD, supplied a plan of action that evidently satisfied Chief Lang, and apparently remains on Moultrie's police force to this day. (Id. at ¶¶4, 27-30; Deposition of Plaintiff, Doc. 19, pp. 28, 75-79).

Plaintiff brought suit against Defendants in this Court on April 27, 2013 pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 1981(a), and the Fair Labor Standards Act ("FLSA"). Plaintiff charges that his being placed on DML in August 2012 constituted racial discrimination as disparate treatment in violation of Title VII and § 1981. Although Plaintiff claims that Defendants are also liable for retaliation in violation of Title VII, there is no

factual allegation in the Complaint, nor any evidence in the record, to support such a claim. Plaintiff's FLSA claim seeks reimbursement of expenses from, and back pay for time spent in, caring for his police K-9. (Complaint, Doc. 1, ¶¶5, 14, 18, 21-22; Plaintiff Depo., pp. 29-31, 86).

### III.   Legal Analysis

Defendants move for summary judgment on all of Plaintiff's claims against the MPD along with those claims against the City of Moultrie based on Title VII and § 1981. Defendants also seek summary judgment on all of the FLSA claims except for those arising from possible violations between April 27, 2011 and May 11, 2011. The motion for partial summary judgment is granted because the undisputed factual record shows that Defendants are entitled to judgment as a matter of law.

#### A.   Claims against the Moultrie Police Department

All of the claims against the MPD are dismissed because Georgia law does not recognize police departments as entities capable of being sued. Smith v. City of Unadilla, 510 F. Supp. 2d 1335, 1342 (M.D. Ga. 2007) (citing Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) and Lovelace v. Dekalb Cent. Prob., 144 F. App'x 793, 795 (11th Cir. 2005) for this principle).

### B. Claims against the City of Moultrie

Summary judgment is also granted for all of Plaintiff's claims against the City of Moultrie except for those arising from FLSA violations that may have occurred between April 27, 2011 and May 11, 2011.

#### 1. Discrimination

There is no evidence that the MPD has treated Plaintiff less favorably than similarly-situated, non-Caucasian police officers. In his deposition, Plaintiff admitted that Borders was also placed on DML and that he did not know of non-Caucasian supervisory officers like himself who had engaged in behavior similar to his. He made vague references to African-American officers who might have violated departmental policy without being disciplined, but the purported violations did not involve racial comments or joking. (Plaintiff Depo., pp. 81-85, 101-08). Because Title VII demands that a plaintiff bringing a disparate treatment claim demonstrate that "the quantity and quality of the comparator's misconduct [was] nearly identical" to his own, Plaintiff's discrimination claim is dismissed. McCann v. Tillman, 526 F.3d 1370, 1373 (11th Cir. 2008) (internal quotation and citation omitted); see also Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) (noting that the analysis of Title VII and § 1981 claims is the same where the claims are based on the same set of facts).[1]

---

[1] In Plaintiff's Response to Defendants' Motion for Summary Judgment, he mentions for the first time having a hostile work environment claim. (Doc. 21, p. 4). Any such claim is

### 2.     Retaliation

Although the Complaint alleges that Plaintiff has suffered retaliation in violation of Title VII and § 1981, the record contains no evidence of this. Establishing a *prima facie* case for such retaliation requires Plaintiff to show that Defendants subjected him to an adverse employment action in retaliation for his having in some manner opposed an employment practice he reasonably believed violated Title VII. *See* Dixon v. The Hallmark Cos., 627 F.3d 849, 856-57 (11th Cir. 2010) (providing the elements of a retaliation claim). There is no evidence Plaintiff engaged in protected activity such as reporting or opposing a likely violation, and there is certainly no evidence Defendants retaliated against him. The retaliation claim is dismissed.

### 3.     Fair Labor Standards Act

Defendants move for summary judgment on all of Plaintiff's FLSA claims except for those based on violations that may have occurred between April 27, 2011 and May 11, 2011, and their motion is granted. Defendants support their argument by contending that the two-year statute of limitations for non-willful FLSA violations bars Plaintiff's claims for any violation that may have taken place

---

dismissed because it was not alleged in the Complaint. *See* Coon v. Georgia Pacific Corp., 829 F.2d 1563, 1568-69 (11th Cir. 1987). However, even if the Complaint had alleged a hostile work environment, the claim would still be dismissed because there is no evidence that Plaintiff endured unwelcome harassment or that he found his circumstances in the MPD to be so severe as to create a hostile working environment. *See* Bryant v. Jones, 575 F.3d 1281, 1296-97 (11th Cir. 2009).

prior to April 27, 2011 and pointing to Plaintiff's testimony that after May 11, 2011 the MPD adequately compensated him for his time as a K-9 handler. Given that Plaintiff has not contested partial summary judgment on his FLSA claims and that the law and facts appear to buttress Defendants' argument, their motion is granted. *See* Resolution Trust v. Dunmar, 43 F.3d 587, 599 (11th Cir. 1995) (stating that "the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned").

### IV. Conclusion

In light of the foregoing analysis, the Motion for Partial Summary Judgment (Doc. 14) by the City of Moultrie and the MPD is granted. Plaintiff's only remaining claims are for violations of the FLSA that may have occurred between April 27, 2011 and May 11, 2011. This case will be set for trial.

**SO ORDERED**, this the 12th day of August, 2014.

*s/ Hugh Lawson*
**HUGH LAWSON, SENIOR JUDGE**

scr